**No. 25-11319**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

EDWIN SILVA,

*Plaintiff – Appellant,*

v.

EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC. and TRANS UNION LLC,

*Defendants – Appellee.*

Appeal from the United Stated District Court
for the Middle District of Florida

No. 6:23-cv-02101-CEM-UAM

---

# APPELLANT'S OPENING BRIEF

---

Tarek N. Chami
**CONSUMER JUSTICE LAW FIRM**
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

Catherine Tillman, FL #0057663
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (941) 263-7310
E: ctillman@consumerjustice.com
*Attorneys for Appellant Edwin Silva*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Edwin Silva ("Plaintiff"), by and through the undersigned counsel, and pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, hereby files this Certificate of Interested Persons and Corporate Disclosure Statement. Plaintiff is not a publicly held corporation and has no parent corporations, affiliates, or subsidiaries with an interest in the outcome of this case. Identifiable interested parties to the action are:

| | |
|---|---|
| Edwin Silva | Plaintiff-Appellant |
| Tarek N. Chami | Counsel for Plaintiff |
| Catherine Tillman | Counsel for Plaintiff |
| Equifax Information Services, LLC | Defendant-Appellee |
| Experian Information Solutions, Inc. | Defendant-Appellee |
| Trans Union LLC | Defendant-Appellee |
| Eric F. Barton | Counsel for Defendant Equifax |
| Jeffrey R. Johnson | Counsel for Defendant Experian |
| Camille R. Nicodemus | Counsel for Defendant Trans Union LLC |

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Edwin Silva ("Plaintiff") respectfully requests oral argument. This appeal arises from Plaintiff's claims against Defendants-Appellees Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax") and Trans Union LLC ("Trans Union") under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"). Because this case involves the misapplication of this Court's precedent regarding Plaintiff's federal rights under the FCRA, Plaintiff suggests that oral argument may assist the Court in resolving those issues.

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES**......6

**JURISDICTIONAL STATEMENT**......9

**INTRODUCTION**......11

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**......14

**STATEMENT OF THE CASE**......15

**I. Factual Background**......15

A. *Plaintiff's Allegations*......15

B. *Plaintiff's Causes of Action against the CRA Defendants*......19

**II. Procedural Background**......19

A. *The CRA Defendants' Motion for Judgment on the Pleadings*......19

B. *The District Court's Decision Granting Judgment on the Pleadings*......22

III. **Standard of Review**......24

**SUMMARY OF ARGUMENT**......27

**ARGUMENT**......29

**I. The district court erred when it concluded that Plaintiff's had not stated a plausible claim under either 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i(a) because it based its ruling on inferences from Plaintiff's allegations that were drawn in favor of the CRA Defendants and because it disregarded inferences in Plaintiff's favor.**......29

A. *To state causes of action for both § 1681e(b) and § 1681i(a), a plaintiff must allege facts showing that a defendant CRA reported inaccurate information and that it failed to follow reasonable procedures for its reporting and for its investigation of the plaintiff's disputes.*......29

B. *To allege that a CRA's reporting was inaccurate, a plaintiff must allege that information in the report was patently incorrect or materially misleading.* 31

C. *Plaintiff alleged facts that, if proven, would show that the CRA Defendants failed to follow reasonable procedures in both their investigations and procedures and that he suffered damages as a result of the CRA Defendants' violations of § 1681e(b) and § 1681i(a).* ........................................................46

**II. Plaintiff alleged facts that, if proven, would permit a reasonable jury to find that the CRA Defendants' violations of the FCRA were "willful" within the meaning of 15 U.S.C. § 1681n.**........................................................49

**CONCLUSION AND RELIEF REQUESTED** ..................................................54

## TABLE OF AUTHORITIES

**Cases**

*Abukhodeir v. AmeriHome Mortg. Co., LLC*,
No. 8:21-cv-563-WFJ-JSS, 2021 U.S. Dist. LEXIS 149742
(M.D. Fla. Aug. 10, 2021) ........................................ 41
*Anderson v. Liberty Lobby, Inc*.,
477 U.S. 242 (1986) ........................................ 24
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 24
*Braun v. Trans Union LLC*,
2019 U.S. Dist. LEXIS 240171 (C.D. Cal. Oct. 10, 2019) ........................................ 43
*Bush v. RoundPoint Mortg. Serv. Corp*.,
122 F. Supp. 3d 1347 (M.D. Fla. 2015) ........................................ 41
*Cahlin v. General Motors Acceptance Corp*.,
936 F.2d 1151 (11th Cir. 1991) ........................................ 29, 31, 46, 47
*Club Madonna, Inc. v. City of Miami Beach*,
924 F.3d 1370 (11th Cir. 2019) ........................................ 46, 48
*Collins v. Experian Info. Solutions., Inc.*,
775 F.3d 1330 (11th Cir. 2015) ........................................ 29, 30
*Cushman v. Trans Union Corp*.,
115 F.3d 220 (3d Cir. 1997) ........................................ 46
*Dennis v. BEH-1, Ltd. Liab. Co*.,
520 F.3d 1066 (9th Cir. 2008) ........................................ 39
*Erickson v. First Advantage Background Servs. Corp*.,
981 F.3d 1246 (11th Cir. 2020) ........................................ 22, 26, 30, 31
*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) ........................................ 40
*Henson v. CSC Credit Servs*.,
29 F.3d 280 (7th Cir. 1994) ........................................ 29, 46
*Hom v. TransUnion, LLC*,
No. 23-CV-81513-ROSENBERG, 2024 U.S. Dist. LEXIS 145524
(S.D. Fla. Aug. 15, 2024) ........................................ 23, 38, 42, 43
*Johnson v. MBNA Am. Bank, NA*,
357 F.3d 426 (4th Cir. 2004) ........................................ 46

*Llewellyn v. Carrington Mortg. Servs., LLC*,
No. 21-00850-CV-W-GAF, 2022 U.S. Dist. LEXIS 255178
(W.D. Mo. Apr. 29, 2022) ........................................ 44

*Losch v. Nationstar Mortg. LLC*,
995 F.3d 937 (11th Cir. 2021) ........................................ passim

*McIntyre v. RentGrow, Inc.*,
34 F.4th 87 (1st Cir. 2022) ........................................ 39

*Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*,
404 F.3d 1297 (11th Cir. 2005) ........................................ 25

*Paul v. Experian Info. Solutions, Inc.*,
793 F. Supp. 2d 1098 (D. Minn. 2011) ........................................ 43, 44

*Pedro v. Equifax*,
868 F.3d 1275 (11th Cir. 2017) ........................................ 31

*Perez v. Wells Fargo N.A.*,
774 F.3d 1329 (11th Cir. 2014) ........................................ 24

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ........................................ 19, 49

*Saunders v. Branch Banking & Tr. Co. of Va.*,
526 F.3d 142 (4th Cir. 2008) ........................................ passim

*Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*,
305 F.3d 1293 (11th Cir. 2002) ........................................ 24

*Thompson v. Regions Security Servs., Inc.*,
67 F.4th 1301 (11th Cir. 2023) ........................................ 24, 25, 37

**Statutes**

15 U.S.C. § 1681 ........................................ 8
15 U.S.C. § 1681e(b) ........................................ passim
15 U.S.C. § 1681i(a) ........................................ passim
15 U.S.C. § 1681n ........................................ passim
15 U.S.C. § 1681p ........................................ 8
28 U.S.C. § 1291 ........................................ 9
28 U.S.C. § 1331 ........................................ 8

**Rules**

Fed. R. App. P. 4(a)(1)(A) ........................................ 8

Fed. R. Civ. P. 12(b)(6) ....................................................................................24
Fed. R. Civ. P. 12(c) ..................................................................................... passim

**JURISDICTIONAL STATEMENT**

In the district court, Plaintiff asserted claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") against Experian, Equifax, and Trans Union (collectively, "the CRA Defendants"), as well as Defendant Freedom Mortgage Corporation ("Freedom Mortgage"). The district court had jurisdiction of this case under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

Plaintiff settled his claims against Freedom Mortgage, which was dismissed by order of the district court pursuant to stipulations between the parties. *See* Notice of Settlement as to Defendant Freedom Mortgage Corporation Only [ECF 57]; Order Terminating Freedom Mortgage as a Defendant [ECF 61]. After Plaintiff's settlement with Freedom Mortgage, the CRA Defendants remained as parties in the case.

On February 20, 2024, the CRA Defendants moved for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). Motion for Judgment on the Pleadings and Memorandum in Support [ECF 47]. The district court granted this motion in an Order [ECF 99] entered on March 21, 2025. The district court entered its Judgment in a Civil Case [ECF 100] in favor of the CRA Defendants on the same day.

Plaintiff filed his Notice of Appeal [ECF 102] in the district court on April 18, 2025, making it timely under Fed. R. App. P. 4(a)(1)(A). Because Plaintiff timely

appealed from a final order of the district court, this Court has jurisdiction under 28 U.S.C. § 1291.

# INTRODUCTION

The CRA Defendants reported that Plaintiff was more than thirty days late in making three of his monthly mortgage payments to Freedom Mortgage at the end of 2022 and the beginning of 2023. Plaintiff disputed this reporting, providing the CRA Defendants with evidence that his bank's bill payment service timely mailed out checks for his November and December 2022 payments and that he authorized Freedom Mortgage to take an electronic funds transfer from his checking account before the end of January 2023, so that his January payment would not be thirty days late. The CRA Defendants ignored this evidence and continued to report that the payments were late, relying entirely on Freedom Mortgage's account of Plaintiff's payment history. According to Freedom Mortgage, Plaintiff could not have timely made these three payments because Freedom never cashed either of the physical checks and because it did not process Plaintiff's lump-sum electronic funds transfer for all three months' payments until late February or March 2023.

Plaintiff alleges that the CRA Defendants breached their duties under the FCRA, specifically their duties to follow reasonable procedures to assure accuracy when reporting consumer information and when investigating the accuracy of their reporting after it was disputed by a consumer. *See* 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a). Plaintiff alleges that he made his payments on time and that Freedom Mortgage received them, even if Freedom Mortgage did not process them

at the time they were made. According to Plaintiff's complaint, these facts make it inaccurate for the CRA Defendants to report that he made his payments thirty days late.

The district court granted judgment on the pleadings to the CRA Defendants under Fed. R. Civ. P. 12(c) because it concluded that Plaintiff admitted that his payments were untimely when he admitted that Freedom Mortgage did not process any of his payments until February or March 2023. In the district court's view, this admission made it impossible for Plaintiff to prove that the CRA Defendants' reporting was inaccurate and, therefore, that it was impossible for Plaintiff to prevail on either of his FCRA claims.

The district court's interpretation of Plaintiff's allegations constitutes an error of law because it depends upon an inference drawn in the CRA Defendants' favor: that Freedom Mortgage processes every payment as soon as it is received and that, therefore, Plaintiff must not have actually made any of his payments until the time that Freedom Mortgage processed them. This conclusion also disregards a plaintiff-favorable inference that is possible from Plaintiff's allegations: that Freedom Mortgage received Plaintiff's three payments on time and simply failed to process them upon receipt. Because the district court's decision depended upon this defendant-favorable inferences, and because such inferences are impermissible at

the pleadings stage, the district court erred in entering judgment on the pleadings for the CRA Defendants.

In reaching its ruling, the district court did not address two alternative arguments advanced by the CRA Defendants: (1) that Plaintiff failed to allege sufficient facts to show that any of their reporting or investigation procedures were unreasonable; and (2) that Plaintiff failed to allege any facts to show that the CRA Defendants did anything that could be characterized as a willful violation of the FCRA. Neither of these arguments can be alternative grounds for full or partial affirmance. Plaintiff alleged facts showing that he provided the CRA Defendants with information to show that he made his payments on time but that the CRA Defendants ignored that information and rubber-stamped Freedom Mortgage's version of events. These allegations are enough to show both that the CRA Defendants' procedures were unreasonable and that they willfully violated the FCRA by deliberately or recklessly disregarding their statutory duty to review the information submitted in connection with consumer disputes.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I. Did the district court err when it concluded that Plaintiff's had not stated a plausible claim under either 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i(a) because it based its ruling on inferences from Plaintiff's allegations that were drawn in favor of the CRA Defendants and because it disregarded inferences in Plaintiff's favor?

II. Did Plaintiff allege facts that, if proven, would permit a reasonable jury to find that the CRA Defendants' violations of the FCRA were "willful" within the meaning of 15 U.S.C. § 1681n.

## STATEMENT OF THE CASE

### I. Factual Background

#### A. *Plaintiff's Allegations*

Plaintiff obtained a mortgage loan from Freedom Mortgage in July 2014 and was required to make monthly payments. Complaint [ECF 1] at ¶ 47. Plaintiff chose to make those payments through an automatic bill payment service offered by PNC Bank ("PNC"), where he has a checking account. *Id*. at ¶ 48. PNC offers its checking account customers a service called "PNC Bill Pay." *Id*. PNC's service is like the countless other bill payment services that consumers and financial institutions have used for years to make their payment transactions more efficient and reliable by having a payor's bank provide a payment directly to the payee's bank. Between 2014 and the end of 2022, PNC Bill Pay permitted a PNC checking account holder to send payment instructions, including payment recipient, payment date, and payment amount, to PNC via the internet, and PNC would issue a physical check that was drawn on the account holder's account and mailed to the recipient. *Id*. at ¶¶ 48, 58.

Plaintiff used PNC Bill Pay to make his mortgage payments to Freedom Mortgage since the loan was issued. Complaint at ¶ 48. Plaintiff never had any problems with the service, and his payments always arrived on time. *See id*.

In December 2022, Freedom Mortgage contacted Plaintiff to inform him that it had not received his monthly payments for November and December of 2022. at

¶¶ 49-50. Plaintiff checked the online records for his PNC checking account and the online records for his PNC Bill Pay service, and those records showed that PNC had timely issued checks for his mortgage payments in each of those months. *Id.* at ¶ 51. Plaintiff informed Freedom Mortgage that he had made his payments on time and in the usual manner, but Freedom Mortgage responded that it had not received the payments. *Id*. at ¶ 52. At Freedom Mortgage's request, Plaintiff submitted documentation showing that the PNC Bill Pay service was reporting the November and December 2022 payments had been made. *Id*. at ¶¶ 52-53.

While Plaintiff was communicating with Freedom Mortgage about his payments for November and December of 2022, his January 2023 payment came due. Complaint at ¶ 54. Plaintiff again used PNC Bill Pay to make that payment, but a couple of weeks later, Plaintiff received a notice that the amount of the mortgage payment had been redeposited into his PNC checking account. *Id*. at ¶¶ 54-55. Plaintiff inquired again with both PNC and Freedom Mortgage. PNC told Plaintiff that the payments for November, December, and January had all been made. Freedom Mortgage told him that it had not received any of those three payments. *Id*. at ¶ 56.

After making further inquiries with PNC, Plaintiff learned that PNC had changed the system for operating its PNC Bill Pay service at the beginning of January 2023 and that Plaintiff's January 2023 payment was not made because of

problems in implementing the new system. *Id.* at ¶ 58. Under the new system, when a PNC customer ordered a bill payment, PNC would send an automatic clearinghouse ("ACH") payment instead of a physical check. Under the new system, the existing information in the bill payment service about Plaintiff's monthly payment to Freedom Mortgage was not sufficient to permit the ACH payment to be completed. *Id.* But PNC insisted that it had sent the physical checks for the November and December 2022 payments as normal. *Id*. at ¶¶ 60-61.

Plaintiff passed this information along to Freedom Mortgage, which insisted that it still had not received the payments for November and December 2022. Complaint at ¶¶ 60-61. After Plaintiff communicated further with PNC, PNC placed a "stop payment" order on its checks for Plaintiff's November and December 2022 payments and started an investigation of why Freedom Mortgage might not have received them. *Id*. at ¶ 61. PNC then advised Plaintiff to bring his Freedom Mortgage account current by making a single payment through PNC Bill Pay to cover the payments for November and December of 2022 and for January and February of 2023. *Id*. In light of the information about the PNC's problems with PNC Bill Pay during January 2023, Freedom Mortgage agreed to accept this consolidated payment. *Id*. Plaintiff authorized this consolidated payment on January 23, 2023. *See id*.

Even then, however, Freedom Mortgage continued to claim that it had not been paid. When the amount of the consolidated payment still had not been deducted from his checking account by February 13, Plaintiff contacted Freedom Mortgage again, which told him that it had not received the consolidated payment. Complaint at ¶¶ 66-67. It advised Plaintiff to stop the January 23 payment and make a new one, which it would backdate to January 23. *Id*. This payment finally went through. *Id*.

Shortly thereafter, Plaintiff learned that the CRA Defendants were reporting that his mortgage payments were late for November and December 2022 and for January 2023. Complaint at ¶ 70. Plaintiff disputed the reporting with the CRAs, submitting a detailed account of what happened with his payments, as well as documents showing that he timely made his payments, including confirmation emails from PNC to prove that his payments were sent to Freedom Mortgage through PNC's system and letters from PNC regarding the results of its investigation. *Id*. at ¶¶ 76-79. Despite all of this information from Plaintiff, and despite the fact that CRAs have been long aware of the general reliability of bill payment services like PNC Bill Pay, the CRA Defendants did not take Plaintiff's request seriously, failing to properly respond to the dispute or account for the information that Plaintiff provided. *Id.* at ¶¶ 80-98.

Plaintiff alleges that the CRA Defendants and Freedom Mortgage all failed to conduct legally adequate reinvestigations because they rely on automated processes

to report and reinvestigate information and do not actually consider evidence submitted by consumers. *Id*. at ¶¶ 36-46, 99-108.

B. *Plaintiff's Causes of Action against the CRA Defendants*

On the basis of all of the foregoing factual allegations, Plaintiff asserts two causes of action against the CRA Defendants. First, he alleges that they willfully violated 15 U.S.C. § 1681e(b) because their reporting about the timeliness of his mortgage payments does not reflect their adoption of reasonable procedures to assure maximum possible accuracy. Complaint at ¶¶ 127-34. Second, he alleges that the CRA Defendants willfully violated 1681i(a) because they failed to conduct a reasonable reinvestigation of his disputes when they ignored the information that Plaintiff sent about the circumstances under which his payments were made and relied entirely on their automated processes for determining whether his payments to Freedom Mortgage were timely. *Id.* at ¶¶ 135-46.

## II. Procedural Background

A. *The CRA Defendants' Motion for Judgment on the Pleadings*

The CRA Defendants moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). *See* Motion for Judgment on the Pleadings [ECF 47] ("Motion"). They argued that Plaintiff's allegations were not sufficient to state plausible claims under either § 1681e(b) or § 1681i(a) for two principal reasons. First, they noted that, to assert causes of action under both § 1681e(b) and § 1681i(a), a plaintiff must allege

that a CRA reported inaccurate information about the plaintiff. Motion at p. 8. They argued that Plaintiff failed to allege any inaccuracy in their reporting because "Plaintiff does not allege anywhere in the Complaint that he timely made the Payments directly to Freedom Mortgage" and because Plaintiff alleges that "Freedom Mortgage received the Payments in or around mid-February – at which time the November 2022, December 2022, and January 2023 [payments] were undeniably at least 30-days [sic] past due." *Id.* at pp. 8-9. Second, the CRA Defendants raised an argument based on the principle that, for the purposes of either § 1681e(b) or § 1681i(a), a cognizable inaccuracy must pertain to factual matters, not legal ones. On this point, the CRA Defendants argued that Plaintiff's allegations about the delayed payments ultimately implicated legal questions about whether PNC or Freedom Mortgage violated their duties under their respective contracts with Plaintiff. *Id.* at pp. 10-15.

The CRA Defendants also argued that, apart from the viability of Plaintiff's allegations of inaccuracy, they were entitled to judgment on the pleadings with respect to the question whether they had willfully violated their duties under § 1681e(b) or § 1681i(a). Motion at pp. 16-17. They noted that, under the Supreme Court's decision in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58–59 (2007), a plaintiff cannot prove that a CRA willfully violated its statutory duties unless he can prove that it followed a practice or procedure reflected a knowing or reckless

disregard of those duties. Motion at p. 16. On the basis of the holding in *Safeco*, they contended that Plaintiff had not alleged any facts showing that their policies and/or procedures were so unreasonable as to constitute a knowing or reckless disregard of the FCRA's requirements. *Id*. at pp. 16-17.

Plaintiff submitted an opposition memorandum that refuted all three of these arguments. Memorandum in Opposition to Motion for Judgment on the Pleadings [ECF 55] ("Opposition"). Plaintiff pointed out that the CRA Defendants' first argument depended upon a flagrant misrepresentation of Plaintiff's allegations. Contrary to the CRA Defendants' assertions, Plaintiff did not concede that his payments for November and December 2022 or January 2023 were untimely. Opposition at p. 9. The Opposition pointed out that he made his payments as normal and that PNC repeatedly informed him that the physical checks had been sent out as normal. *Id*. (citing Complaint at ¶¶ 48, 51-53, 57-66). Indeed, the Complaint specifically and unequivocally alleged that a PNC representative informed him that the payment "that the November 2022 and December 2022 checks were sent as normal." Complaint at ¶ 60. Plaintiff argued that, if proven, these allegations would show that Freedom Mortgage timely received his payments and that, therefore, it was inaccurate for the CRA Defendants to report that his payments were untimely. *Id*. at pp. 9-10.

Plaintiff also argued that the accuracy of the CRA Defendants' reporting depended upon the question whether his payments were timely made and that this is a question of objective fact, not a legal question. Opposition at pp. 10-17. Plaintiff pointed out that whether and when Freedom Mortgage received his payments does not require any interpretation of legal rules but rather involves straightforward matters of objective fact. *Id*. Accordingly, Plaintiff did allege the kind of inaccuracies that can give rise to causes of action under both § 1681e(b) and § 1681i(a).

Finally, Plaintiff argued that the Complaint did allege facts sufficient to prove willful violations by the CRA Defendants. Opposition at pp. 17-20. Plaintiff noted that, in *Saunders v. Branch Banking & Tr. Co. of Va*., 526 F.3d 142 (4th Cir. 2008), the Fourth Circuit held that a jury can properly find a willful violation when a defendant disregards information that would show whether its reporting was accurate. *See* Opposition at pp. 18-19 (discussing *Saunders*). And Plaintiff argued that his Complaint provided a basis for finding such facts because it alleged that the CRA Defendants each received documents and information showing that Plaintiff timely made the mortgage payments in question and that they failed to consider that information because they either conducted no investigation at all or simply relied upon an automated process in which Plaintiff's documents and information were ignored. *See id*.

B. *The District Court's Decision Granting Judgment on the Pleadings*

The district court granted the CRA Defendants' Motion. Order [ECF 99]. To reach its ruling, the district court only considered the question whether Plaintiff had alleged factual inaccuracies in the CRA Defendants' reporting. More specifically, the district court considered whether Plaintiff had alleged facts to show that reporting was "'factually incorrect'" or "'objectively likely to mislead its intended user.'" Order at p. 5 (quoting *Erickson v. First Advantage Background Servs. Corp*., 981 F.3d 1246, 1252 (11th Cir. 2020)).

The district court first concluded that Plaintiff's allegations conceded that the CRA Defendants' reporting was factually correct. As the district court put it, "[t]he facts as alleged by Plaintiff make clear that these reports were factually correct. Plaintiff admits that, while he attempted to timely make these payments, Freedom Mortgage did not receive these payments until February or March 2023." Order at p. 6 (citing Complaint at ¶¶ 14-17). The district court acknowledged Plaintiff's argument that his allegations could support a finding that Freedom Mortgage had timely received the payments; but it rejected this argument as an "attempt[ ] to skirt these allegations" because "Plaintiff alleged that PNC confirmed there was an issue with the payments; PNC issued a 'stop payment' on the November 2022 and December 2022 payments; the January 2023 payment was not sent and the money was returned to Plaintiff's bank account." Order at p. 6. The district court concluded that there was "only one possible understanding" of the allegation that PNC had

issued a "stop payment" order for the November and December 2022 payments: that "while Plaintiff may have attempted to make payments, the payments were not actually made to Freedom Mortgage until February or March 2023—rendering the November 2022, December 2022, and January 2023 payments late." *Id*. The district court did not address Plaintiff's argument that there was another "possible understanding" – that Freedom Mortgage received the checks but failed to present them to PNC for payment. In the district court's view, the fact that Freedom Mortgage did not cash the checks necessarily and inescapably meant that Freedom Mortgage had not received them in the first place. *See id*.

The district court also rejected the argument that Plaintiff had made plausible allegations that the CRA Defendants' reporting was misleading. Citing four district court opinions from Florida, Missouri, California, and Minnesota, the district court concluded that a CRA's reporting is never misleading when it contains "'accurate credit information without additional, contextual information demanded by the plaintiff.'" Order at pp. 6-7 (quoting *Hom v. TransUnion, LLC*, No. 23-CV-81513-ROSENBERG, 2024 U.S. Dist. LEXIS 145524 (S.D. Fla. Aug. 15, 2024)).

## III. Standard of Review

When a district court grants judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), this Court conducts a *de novo* review, applying the same standard as

the district court. *Thompson v. Regions Security Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023).

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when "'there are no material facts in dispute and the moving party is entitled to judgement as a matter of law.'" *Thompson*, 67 F.4th at 1305 (quoting *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,477 U.S. 242, 247 (1986).

The standard for granting judgment on the pleadings is similar to the standard for granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). "Whether the court examine[s] [the complaint] under Rule 12(b)(6) or Rule 12(c), the question [is] the same: whether [the complaint] state[s] a claim for relief." *Id*. A complaint meets the standard for either Rule 12(b)(6) or Rule 12(c) when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Rule 12(b)(6)). A complaint states a facially plausible claim for relief "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

When considering a motion for judgment on the pleadings, the court must view the facts alleged in a light most favorable to the nonmoving party. *Thompson*, 67 F.4th at 1305. A judgment on the pleadings can be granted only if the nonmoving party can prove no set of facts which would allow it to prevail. *Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*, 404 F.3d 1297, 1303 (11th Cir. 2005) (citations omitted). Accordingly, a case is "ideally suited for disposition via Rule 12(c)" when "the relevant facts are undisputed and there are purely legal questions remaining as to liability" that are ready for immediate resolution. *Palmer & Cay, Inc.*, 404 F.3d at 1303 (internal quotations and citations omitted).

## SUMMARY OF ARGUMENT

The district court erred when it concluded that Plaintiff had not alleged a factual inaccuracy in the CRA Defendants' reporting. Plaintiff alleged facts that would permit a jury to find either or both of two facts: (1) that, through PNC Bill Pay, he had timely submitted physical checks to Freedom Mortgage for his November and December 2022 payments; and (2) that he had made arrangements with Freedom Mortgage so that his January 2023 payment would not be thirty days late. If the jury found either of these facts, it could also find that the CRA Defendants' reporting was either factually incorrect or materially misleading. *See Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) (defining the meaning of inaccuracy for the purposes of the FCRA). The district court decided that such a finding was impossible because Plaintiff had also alleged that Freedom Mortgage did not receive the funds for the payments in question until February or March of 2023. But this decision requires an inference against Plaintiff: that Freedom Mortgage must not have received either the physical checks or the ACH payment before February or March of 2023 because it did not process those payments by cashing the checks or completing the funds transfer. Such inferences are impermissible under Fed. R. Civ. P. 12(c).

Although the district court decided the case entirely on the issue of inaccuracy, the issue of whether the CRA Defendants followed reasonable procedures in their

reporting or investigations cannot be an alternative ground for affirmance. Plaintiff alleged facts showing that the CRA Defendants simply never considered the information and documents that he submitted with his disputes of their reporting, relying entirely on their own automated processes for conducting investigations, and continuing to report inaccurate information even though it had access to information demonstrating the inaccuracy. A CRA's procedures for reporting and investigations are both unreasonable when it reports inaccurate information, ignores information from the consumer that points out the inaccuracy, and then continues to publish consumer reports that contain the inaccuracy. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945-46 (11th Cir. 2021).

The CRA Defendants are also not entitled to a partial affirmance on the question whether their violations of the FCRA were willful. Plaintiff alleged facts showing that the CRA Defendants deliberately disregarded the information he provided to prove that, as a factual matter, his payments to Freedom Mortgage were timely. Such allegations are enough to state a plausible claim for a willful violation of both § 1681e(b) and § 1681i(a). *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142 (4th Cir. 2008)

## ARGUMENT

**I. The district court erred when it concluded that Plaintiff's had not stated a plausible claim under either 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i(a) because it based its ruling on inferences from Plaintiff's allegations that were drawn in favor of the CRA Defendants and because it disregarded inferences in Plaintiff's favor.**

A. *To state causes of action for both § 1681e(b) and § 1681i(a), a plaintiff must allege facts showing that a defendant CRA reported inaccurate information and that it failed to follow reasonable procedures for its reporting and for its investigation of the plaintiff's disputes.*

The FCRA requires CRAs to follow reasonable procedures to assure maximum possible accuracy when reporting consumer information and when responding to consumer disputes about the accuracy of that information. Section 1681e provides that, when preparing a consumer report, a CRA "shall follow reasonable procedures to assure maximum possible accuracy" in the reported information. 15 U.S.C. § 1681e(b). Section 1681i provides that, if a consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file," the CRA "shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is accurate." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

Causes of action under § 1681e(b) and § 1681i(a) have similar elements. For a cause of action under § 1681e(b), the plaintiff must show: (1) that a CRA published a report containing factually inaccurate information; (2) that the CRA failed to

follow reasonable procedures when preparing and distributing the report; and (3) that the plaintiff suffered damages. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021); *see also Cahlin v. General Motors Acceptance Corp*., 936 F.2d 1151, 1157, 1160 (11th Cir. 1991). For a cause of action under § 1681i(a), the plaintiff need not show that the CRA published a report, but it must show that: (1) the CRA's file about the plaintiff includes inaccurate information; (2) that the plaintiff submitted a dispute to the CRA, challenging the accuracy of the information; and (3) that the plaintiff suffered damages. *Losch*, 995 F.3d at 944; *see also Collins v. Experian Info. Solutions., Inc.,* 775 F.3d 1330, 1335 (11th Cir. 2015).

Given the specific requirements for the investigations of consumer disputes, a CRA's failure to adequately respond to a consumer dispute can entail violations of both § 1681e(b) and § 1681i(a). Section 1681i(a) provides that, upon conducting its own independent investigation of a consumer dispute, a CRA must delete an item of information from its files if that item of information "is found to be inaccurate or incomplete or cannot be verified." 15 U.S.C. § 1681i(a)(5)(A). If a consumer provides a CRA with information that raises doubts about the reliability of the original source for that information, the CRA has a duty to do go beyond the information provided by the original source. *Henson v. CSC Credit Servs*., 29 F.3d 280, 286-87 (7th Cir. 1994); *Losch*, 995 F.3d at 945-46 (following *Henson*). Accordingly, if a CRA fails to adequately response to a well-supported consumer

dispute, and if the CRA keeps the disputed information in its files and continues to report it, the CRA can also be liable for both a violation of § 1681i(a) and a violation of § 1691e(b). Ignoring the consumer's dispute implicates the reasonableness of both the CRA's procedures for investigating and for its subsequent reporting. *Losch*, 995 F.3d at 945-46; *see also Collins*, 775 F.3d at 1331-33.

### B. *To allege that a CRA's reporting was inaccurate, a plaintiff must allege that information in the report was patently incorrect or materially misleading.*

As this Court has held, one of the FCRA's stated purposes is "to insure fair and accurate reporting about consumers." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020). To accomplish that purpose, the FCRA "imposes various requirements on consumer reporting agencies," one of which "is that consumer reporting agencies 'follow reasonable procedures' to ensure 'maximum possible accuracy' of information in consumer reports. *Id.* (quoting 15 U.S.C. § 1681e(b)). Accordingly, when a plaintiff alleges that a CRA violated § 1681e(b) by publishing an inaccurate consumer report, or when a plaintiff alleges that a CRA violated § 1681i(a) by failing to adequately investigate a reported inaccuracy, the threshold question is whether the CRA's report was inaccurate. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021).

For the purposes of the FCRA, information in a consumer report can be inaccurate in two ways: because it is factually incorrect or because it is misleading to its users as to its meaning or implication. As the *Erickson* Court explained:

> to reach "maximum possible accuracy," information must be factually true and also unlikely to lead to a misunderstanding. Under that standard, a report that contains factually incorrect information is plainly inaccurate under the Fair Credit Reporting Act. So too for a report that contains factually correct information but nonetheless misleads its users as to its meaning or implication.

*Erickson*, 981 F.3d at 1252; *see also Losch*, 995 F.3d at 944-45; *Pedro v. Equifax*, 868 F.3d 1275, 1281 (11th Cir. 2017).

To determine whether a CRA's reporting meets the FCRA's requirements for accuracy, courts apply an objective standard. *Erickson*, 981 F.3d at 1252. Such an objective standard is "one 'that should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting.'" *Id*. (quoting *Cahlin v. General Motors Acceptance Corp*., 936 F.2d 1151, 1158 (11th Cir. 1991)). "[W]hen evaluating whether a report is accurate under the [FCRA], we look to the objectively reasonable interpretations of the report. If a report is so misleading that it is objectively likely to cause the intended user to take adverse action against its subject, it is not maximally accurate." *Erickson*, 981 F.3d at 1252.

1. *Plaintiff alleges facts that, if proven, would permit a jury to find that the CRA Defendants' reporting was patently incorrect*

> *because Freedom Mortgage timely received Plaintiff's monthly payments for November and December 2022 and January 2023, even if it did not process those payments immediately upon receipt.*

The district court held that Plaintiff had not stated a plausible claim under either § 1681e(b) or § 1681i(a) because he failed to allege facts showing that it was factually incorrect for the CRA Defendants to report that his payments for November and December 2022 and January 2023 were late. Order [ECF 99] at pp. 5-6. In the district court's view, Plaintiff effectively conceded that his payments were actually late when he alleged facts showing that Freedom Mortgage never cashed any of the physical checks sent through PNC Bill Pay and that the funds for the three payments were not transferred from Plaintiff's account until February or March 2023. *Id*. The district court's conclusion on this point was erroneous because it depended upon inferences that were favorable to the CRA Defendants and because it discounted inferences that were favorable to Plaintiff. When Plaintiff's allegations are considered in the light most favorable to him, those allegations state a plausible claim that the CRA Defendants' reporting was factually incorrect.

Taken as a whole, Plaintiff's allegations would permit a reasonable jury to find that he timely made his payments to Freedom Mortgage and that Freedom Mortgage simply failed to process the payments upon receipt. Therefore, a jury could find it was factually incorrect for the CRA Defendants to report that his payments

for November and December 2022 and January 2023 were more than thirty days late. Such a finding would arise from the specific allegations that Plaintiff makes about the PNC Bill Pay system generally and about how it operated with respect to his payments for those three months.

Plaintiff alleges that, since 2014, he used the PNC Bill Pay service to make his payments to Freedom Mortgage. Complaint [Doc. No. 1] at ¶ 48. He also alleges that, before January 2023, PNC Bill Pay sent payments by mailing a physical check to the designated recipient. *Id*. at ¶¶ 48, 58. During the period between 2014 and the end of 2022, Plaintiff made his payments by using the PNC website at the beginning of each month to direct PNC Bill Pay to send checks to Freedom Mortgage for the amount of his monthly payment. *Id*. at ¶¶ 48-54.

For Plaintiff's payments in November and December 2022, the Complaint alleges that PNC mailed the physical checks to Freedom Mortgage in a timely manner, as it had done since 2014. *Id*. at ¶ 60. The Complaint specifically identifies a PNC employee who told Plaintiff "that the November 2022 and December 2022 checks were sent as normal." *Id*. Because the checks for those two months were sent, Plaintiff's account records showed that the payments had been timely sent to Freedom Mortgage. Id. at ¶¶ 52-53, 56.

In January 2023, PNC changed the PNC Bill Pay system so that payments were made electronically, through an ACH transaction with the recipient, and not

through mailing a physical check. *Id*. at ¶ 58. Plaintiff alleges that, on January 5, 2023, he directed PNC Bill Pay to make his January 2023 payment to Freedom Mortgage. *Id*. at ¶ 54. Once again, PNC's information for Plaintiff's account showed that the January 2023 payment had been timely made. *Id*. at ¶ 56. But, because of a problem with PNC's changeover to ACH payments, the January 2023 payment did not go through when Plaintiff directed it, and the funds for that payment were returned to his account on January 17, 2023. *Id*. at ¶ 55.

After learning about the return of his January 2023 payment, and after inquiring with PNC and Freedom Mortgage, Plaintiff learned that the November and December 2022 checks still had not been cashed and that Freedom Mortgage continued to claim that it had not received them. *Id*. at ¶ 57. At PNC's suggestion, Plaintiff decided to make a single payment to cover the amounts of four monthly payments: November and December 2022 and January and February 2023. *Id.* at ¶ 61. Plaintiff authorized Freedom Mortgage to take this lump-sum payment and Freedom Mortgage gave him a confirmation number for the payment, but it still did not go through. Plaintiff once again authorized the lump-sum payment on February 13, 2023, and this time, it went through. *Id*. at ¶¶ 65-67. Plaintiff alleges that, when he made his second, successful attempt at the lump-sum payment, Freedom Mortgage informed him that it would backdate the payment to January 23, 2023,

which would assure that the January payment would be treated as though it were less than thirty days late.

If Plaintiff could prove all of these allegations about the specific facts surrounding his payments, a reasonable jury could find that it was factually incorrect for the CRA Defendants to report that the November and December 2022 and January 2023 payments were thirty days late. A jury could find that, given the well-known reliability of bill payment systems like PNC Bill Pay and given PNC's assertions about how its system operated here, Freedom Mortgage did timely receive the November and December 2022 payments because PNC mailed physical checks to Freedom Mortgage and that they were delivered on time. On the basis of this finding, a jury could reasonably infer that Plaintiff timely made his payments but, for whatever reason, Freedom Mortgage simply failed to process the checks. Thus, the jury could find that the November and December 2022 payments were timely and that the CRA Defendants' reporting about them was inaccurate. Similarly, the jury could find that, for the January 2023, payment, Plaintiff discovered the problem with the changes to the PNC Bill Pay system during January 2023 and that he and Freedom Mortgage agreed upon payment arrangements so that the January payment would not be thirty days late.

Although Plaintiff argued that his allegations could reasonably support such findings and inferences, the district court decided that they could not. *Compare*

Opposition [ECF 55] at pp. 9-10 *and* Order at p. 6. According to the district court, "the only possible understanding of these allegations is that, while Plaintiff may have attempted to make payments, the payments were not actually made to Freedom Mortgage until February or March 2023 – rendering the November 2022, December 2022, and January 2022 payments late." Order at p. 6. The district court's "only possible understanding" depends upon drawing inferences favorable to the CRA Defendants and rejecting inferences favorable to Plaintiff. In fact, the district court explicitly and improperly rejected Plaintiff-favorable inferences as "attempts to skirt" his own allegations. *Id*.

With respect to the November and December 2022 payments, when Plaintiff alleged that PNC issued a stop payment order for the physical checks, he was not admitting that he failed to direct the payments through PNC Bill Pay, that PNC failed to mail the checks, or that Freedom Mortgage did not receive them. In fact, Plaintiff specifically alleged that PNC sent the checks for the November and December 2022 payments as normal, a fact that strongly supports the idea that the payments were delivered to Freedom Mortgage on time. Complaint at ¶ 60. He only admitted that the checks had not been cashed. As noted above, it is reasonably possible to infer that Freedom Mortgage timely received those checks and lost them or otherwise made an error of its own in processing them. The district court reached its

"understanding" of these two payments only by drawing reasonable inferences against Plaintiff.

With respect to the January 2023 payment, the district court inferred that Plaintiff made that payment in February or March 2023 because that is when the funds for that payment transferred from Plaintiff's PNC account to Freedom Mortgage. But Plaintiff specifically alleges that, before the end of January, he made arrangements with Freedom Mortgage to make a lump-sum payment that would cover his January obligation. Complaint at ¶¶ 62-63. Plaintiff also alleges that Freedom Mortgage did not act on his authorization of payment and that he had to make it again, on February 13, 2023, and Freedom Mortgage agreed to backdate the payment to January 23, meaning that it would not be recorded as thirty days late. Id. at ¶¶ 65-67. The district court's "understanding" of the January payment is only possible if one concludes that Plaintiff's allegations are false, which, of course, is contrary to the requirements for granting judgment on the pleadings under Rule 12(c). *Thompson v. Regions Security Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023).

2. *Plaintiff alleged facts that, if proven, would permit a jury to find that the CRA Defendants' reporting was materially misleading because, even if it was technically accurate to report that his payments for November and December 2022 and January 2023 were late, it was misleading to publish a report creating the impression that Plaintiff had not made reasonable efforts to make the payments on time.*

In addition to arguing that he had alleged factually incorrect reporting by the CRA Defendants, Plaintiff opposed judgment on the pleadings by arguing that, if proven, his allegations could permit a reasonable jury to find that the CRA Defendants' reporting was misleading, if not patently incorrect. But the district court rejected this theory on the basis of its defendant-favorable view of those allegations. Because it concluded that Plaintiff had alleged facts establishing that his payments were late, the district court relied upon case law holding that factually correct reporting could not be misleading simply because it omitted "'additional contextual information,'" which might explain the correctly reported facts. Order at pp. 6-7 (quoting *Hom v. TransUnion, LLC,* No. 23-CV-81513-ROSENBERG, 2024 U.S. Dist. LEXIS 145524, at *3 (S.D. Fla. Aug. 15, 2024)). The district court's opinion on this point was error because, on the basis of Plaintiff's allegations, a jury could find that the CRA Defendants reporting was misleading, even if it were technically accurate.

This Court has held that a consumer report is inaccurate if omits information that is relevant to understanding all of the material factual circumstances surrounding a debt. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021). There, the plaintiff's mortgage debt had been discharged in bankruptcy, but a CRA continued to report that he still owed the debt and that he was delinquent in making his payments. *Id.* at 940-41. The plaintiff alleged that the CRA had violated §

1681e(b) and § 1681i(a). *Id*. at 941. With respect to the threshold issue of accuracy, the CRA insisted that its reporting was technically accurate because the bankruptcy discharge only prevented the mortgagee from collecting the debt and did not expunge the debt or eliminate its existence. *Id*. at 944-45. This Court rejected the CRA's argument, concluding that it was inaccurate for the CRA to report the debt as outstanding and delinquent. *Id.* at 945.

Other federal courts agree with the *Losch* Court's conclusion that reporting can be inaccurate if it omits material factual information that is necessary to a complete understanding of other information that is technically correct. For example, in *McIntyre v. RentGrow, Inc*., 34 F.4th 87 (1st Cir. 2022), a tenant-screening report listed two closed collection actions against the plaintiff as though they were still pending, permitting the impression that the plaintiff currently owed outstanding judgment debts. In fact, the listed collection actions had been concluded. One was withdrawn, and the plaintiff had paid off the amount demanded in the other. The First Circuit concluded that "[a] jury could find that this omission constituted a material inaccuracy." *Id*. at 97.

Similarly, in *Dennis v. BEH-1, Ltd. Liab. Co.*, 520 F.3d 1066 (9th Cir. 2008), the plaintiff had been sued by his landlord for continuing to occupy the rental property after his lease rights expired. *Id*. at 1068. The plaintiff and landlord entered a settlement agreement, which was entered on the state court docket as a "judgment."

*Id*. When the plaintiff had satisfied his obligations under the settlement agreement, the parties stipulated to a dismissal without prejudice, which the court entered. A CRA reported that plaintiff had a "civil claim judgment" entered against him. Id. The plaintiff disputed this reporting, informing the CRA that the case had been settled and that no judgment had been entered against him. *Id*. The Ninth Circuit concluded that the undisputed facts about the underlying case and the CRA's reporting were sufficient to establish that the reporting was inaccurate. *Id*. at 1069. Even though it may have been technically accurate to report that there was a judgment entered on the state court docket, the omission of information about the subsequent dismissal order was enough to make the report misleading. *See id*.

As this case law demonstrates, the determination of whether reported information is misleading involves a weighing of evidence about all of the factual circumstances surrounding the reported information. Federal courts agree that such weighing is ordinarily a task for a jury. The Third Circuit has held that, "[w]hether technically accurate information was misleading in such a way and to such an extent that [it] can be expected to have an adverse effect is generally a question to be submitted to the jury." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (internal quotation marks omitted). Other courts agree, including district courts in this Circuit. *See, e.g., Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 150 (4th

Cir. 2008); *Abukhodeir v. AmeriHome Mortg. Co., LLC*, No. 8:21-cv-563-WFJ-JSS, 2021 U.S. Dist. LEXIS 149742, at *9 (M.D. Fla. Aug. 10, 2021); *Bush v. RoundPoint Mortg. Serv. Corp*., 122 F. Supp. 3d 1347, 1351 n.3 (M.D. Fla. 2015).

Plaintiff alleged facts that would permit a jury to find that the CRA Defendants' reported materially misleading information about his November and December 2022 and January 2023 payments. A jury could find that it was technically correct for the CRA Defendants to report that Plaintiff was late in making those payments because Freedom Mortgage did not receive the funds to cover those payments until sometime in February or March 2023. But even if this reporting was found to be technically accurate, a jury could still find that it was misleading because it omitted information showing that PNC timely mailed physical checks for the November and December 2022 payments and that, in late January 2023, Freedom Mortgage accepted an electronic payment from Plaintiff, even providing him with a confirmation number for that payment. When the CRA Defendants simply reported those payments as late, it created the misleading impression that Plaintiff was unwilling or unable to make the payments on time. The omitted information about the circumstances for those payments creates a very different impression about Plaintiff's creditworthiness.

The district court rejected Plaintiff's arguments about the misleading nature of the CRA Defendants' reporting because it erroneously concluded that Plaintiff's

allegations conceded that such reporting was factually correct and that Plaintiff was challenging the accuracy of that reporting by arguing that he was not legally responsible for the missed payments. In this connection, the district court relied on four decisions from scattered federal jurisdictions, all of which held that a CRA's reporting is not misleading because it omits contextual information that relates to a legal theory to explain the undisputed fact of a missed payment. Order [ECF 99] at pp. 6-7 (citing cases). But the cited case law was inapposite because it only applies when there is no question that the information at issue is factually correct and when the omitted information pertains to a legal theory, not a matter of objective fact.

The first case cited by the district court was *Hom v. TransUnion, LLC*, No. 23-CV-81513-ROSENBERG, 2024 U.S. Dist. LEXIS 145524 (S.D. Fla. Aug. 15, 2024). There, the defendant CRAs reported that the plaintiff had failed to make certain payments on her debts. *Id*. at *1-2. The plaintiff conceded that the payments had been missed, but she alleged that it was misleading for the CRAs to report the missed payments without out also reporting that, as a part of their divorce settlement, her ex-husband had agreed to make those debt payments on her behalf. *Id*. at *2-3. The Hom Court emphasized that the report of the missed payments was "a truthful statement of objectively verifiable facts," and it pointed out that the omissions identified by the plaintiff pertained to a legal question: whether her ex-husband really had an obligation to make those payments. *Id*. at *3-5 ("while the Plaintiff

may well have a viable cause of action against her ex-husband for damages, she does not have a cause of action against the credit reporting agencies . . . .").

In *Braun v. Trans Union LLC*, 2019 U.S. Dist. LEXIS 240171 (C.D. Cal. Oct. 10, 2019), the plaintiff signed a thirty-month lease for a car with Volvo Car Financial Services, U.S. LLC ("VFS") and authorized VFS to deduct each of the thirty monthly payments from her bank account. She extended the lease by two months, and, according to her complaint, "did not realize that her autopay did not continue during that extension." *Id*. at *2. She admitted that she did not timely make the monthly payments during the extension period and alleged that it was inaccurate for CRAs to report the payments as untimely because the untimeliness was ultimately traceable to VFS' breach of a legal duty to her. *Id*. at *7. As in *Hom*, the district court rejected the idea that a CRA's duty of accuracy required it to supplement objectively verified information with a legal theory as context.

The plaintiff also conceded that she missed payments in *Paul v. Experian Info. Solutions, Inc*., 793 F. Supp. 2d 1098 (D. Minn. 2011). In that case, the plaintiff had numerous credit accounts with a bank and decided to close several of them by paying them off. She went to the bank and worked with a bank representative to do so. *Id*. at 1099. The bank representative informed the plaintiff that the chosen accounts had all been paid off and closed, but, for some reason, one of the accounts that the plaintiff intended to close remained open, with an outstanding balance. *Id*. Believing

that the account was paid and closed, the plaintiff did not make subsequent payments when they were due, and a CRA reported the unmade payments as late. *Id*. In her deposition, the plaintiff conceded that the payments had not been made, but she insisted that the CRA's reporting was inaccurate because the bank representative's misstatement relieved her of responsibility for the late payments. *Id*. As the plaintiff put it, "'[b]ut I think in terms of responsibility, I did not make a late payment. . . . it's a matter of knowledge . . . I wasn't aware of this payment being due, so as far as I was concerned, it was never late.'" *Id*. (quoting the plaintiff's deposition). The district court concluded that the plaintiff's legal theory about who bore legal responsibility for the missed payments was irrelevant to determining the accuracy of the reporting. *Id*. at 1101.

In *Llewellyn v. Carrington Mortg. Servs., LLC*, No. 21-00850-CV-W-GAF, 2022 U.S. Dist. LEXIS 255178 (W.D. Mo. Apr. 29, 2022), the plaintiffs authorized a mortgage servicer to withdraw their monthly payments from their checking account. Id. at *2. The servicer failed to make an authorized withdrawal, and the plaintiffs "do not dispute that the payment to Carrington was late." *Id*. at *8. Like the plaintiff in *Paul*, the plaintiffs in *Llewellyn* insisted that it was inaccurate to report the payment as late because the servicer was legally responsible for missing the payment, but the district court followed the reasoning in *Paul* and insisted that a

CRA's reporting of factually correct information is accurate even if it omits explanatory information. *Id*.

Contrary to the district court's analysis, none of these cases apply here because, unlike the plaintiffs in the district court's cited case, Plaintiff's allegations do not operate as a concession that he failed to timely make his payments. He alleges facts showing that PNC timely mailed the physical checks for his November and December 2022 payments, which would support the inference that Freedom Mortgage timely received them. Complaint at ¶¶ 51-53, 60. Plaintiff also alleges that, on January 23, 2023, he authorized Freedom Mortgage to withdraw the lump-sum payment from his account and that Freedom Mortgage accepted the payment and even gave him a confirmation number for it. *Id*. at ¶¶ 62-63. Thus, Plaintiff alleges that, as a matter of objectively verifiable fact, he actually did make the payments on time and that Freedom Mortgage simply failed to process those timely payments when he made them. Plaintiff is not alleging that the CRA Defendants' reporting was misleading because it omitted a legal theory; he is alleging that it is misleading because it omits a material fact.

C. *Plaintiff alleged facts that, if proven, would show that the CRA Defendants failed to follow reasonable procedures in both their investigations and procedures and that he suffered damages as a result of the CRA Defendants' violations of § 1681e(b) and § 1681i(a).*

As noted above, the district court stopped its analysis after making its ruling on the threshold issue of inaccuracy, and it never considered whether Plaintiff's complaint adequately alleged facts to establish the other elements of his causes of action under § 1681e(b) and § 1681i(a): that the CRA Defendants failed to follow reasonable procedures in their reporting about Plaintiff and in their investigations of Plaintiff's disputes; and that Plaintiff suffered damages. Because Plaintiff's Complaint includes allegations that are sufficient to prove that the CRA Defendants' procedures were not reasonable, this element of Plaintiff's claims cannot serve as an alternative ground for affirmance. *Cf. Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1378 (11th Cir. 2019) (noting that appellate courts can affirm the district court's judgment on "any basis supported by the record, regardless of whether the district court decided the case on that basis").

In general, under the FCRA, the reasonableness of a defendant's procedures depends upon a cost-benefit analysis. *See, generally, Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004); *Cushman v. Trans Union Corp*., 115 F.3d 220, 224-25 (3d Cir. 1997); *Henson v. CSC Credit Servs*., 29 F.3d 280, 287 (7th Cir. 1994). Because the assessment of reasonableness requires a determination of the relative weight of various considerations, the question whether a defendant's procedures were reasonable is reserved for the jury whenever a plaintiff can show that the defendant reported inaccurate information. *Cahlin v. General Motors Acceptance*

*Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (holding that whether a credit-reporting agency acted reasonably under the FCRA "will be a jury question in the overwhelming majority of cases.")

Plaintiff's allegations are more than enough to create a viable question about whether the CRA Defendants' procedures were reasonable. First, as noted above, Plaintiff has alleged facts showing that the CRA Defendants' reporting was inaccurate. In itself, a showing of inaccuracy is enough to raise a question about the reasonableness of a CRA's procedures. See *Cahlin*, 936 F.2d at 1156. Second, Plaintiff alleges specific facts to show how the CRA Defendants' procedures were unreasonable. He alleges that, in general, the CRA Defendants rely upon automated procedures that result in a superficial inquiry that usually only confirms that the disputed information was reported by the furnisher, not whether it was accurate. Complaint [ECF 1] at ¶¶ 36-46, 99-108. In addition, he alleges that the CRA Defendants' undertook such perfunctory procedures here, failing to review the information that he provided to show that his payments were timely made. Id. at ¶¶ 80-98. And, because the CRA Defendants' continued to report inaccurate information about his payments after Plaintiff had given them accurate information, their failure to investigate constitutes an unreasonable procedure for both the purposes of § 1681i(a) and § 1681e(b). *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945-46 (11th Cir. 2021).

Plaintiff also sufficiently alleged that he suffered damages as a result of the CRA Defendants' inaccurate reporting and insufficient investigations. Plaintiff alleged that he was delayed in obtaining a mortgage for a new home after moving to Florida because of the CRA Defendants' inaccurate reporting. Complaint at ¶¶ 71-75. He also alleged that this delay required him to incur short-term rental and storage costs, which he could have avoided if the CRA Defendants' reporting had been accurate in the first place. Id. at ¶¶ 109-112. In its Motion, the CRA Defendants did not dispute that such allegations of damages were sufficient to meeting the requirements for stating a claim under either § 1681e(b) or § 1681i(a). *See, generally*, Motion [ECF 47].

## II. Plaintiff alleged facts that, if proven, would permit a reasonable jury to find that the CRA Defendants' violations of the FCRA were "willful" within the meaning of 15 U.S.C. § 1681n.

In their Motion, the CRA Defendants argued that, even if Plaintiff had adequately alleged that they violated § 1681e(b) and/or § 1681i(a), Plaintiff had not alleged any facts to show that those violations were willful. Motion [ECF 47] at 16-17. As with the questions about whether the CRA Defendants' procedures were reasonable, any questions about willfulness cannot be an alternative basis for partially affirming the district court's ruling. *Cf. Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1378 (11th Cir. 2019).

The FCRA makes punitive damages available for willful violations of their requirements. Under 15 U.S.C. § 1681n(a), "any person who willfully fails to comply with any requirement imposed by [the FCRA] with respect to any consumer is liable to that consumer" for several different forms of damages including "such amount of punitive damages as the court may allow." For the purposes of the FCRA, the term "willful" "covers both knowing and reckless disregard of the law." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59, (2007).

The CRA Defendants argued that Plaintiff has not alleged sufficient facts to prove a willful violation because Plaintiff has not alleged a factual inaccuracy and because Plaintiff cannot show that they engaged in a knowing or reckless disregard of the FCRA. Motion at pp. 16-17. According to the CRA Defendants, even if it was inaccurate to report the payments as late, such reporting reflected a reasonable understanding of their obligations under the FCRA. *Id.* This argument fails because Plaintiff has alleged facts showing that the CRA Defendants deliberately ignored the information that he submitted along with his dispute, even though § 1681i(a) specifically requires that such information be considered in any dispute investigation.

The CRA Defendants' argument is undermined by a Fourth Circuit case, *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142 (4th Cir. 2008). In *Saunders*, the plaintiff's claim arose under 15 U.S.C. § 1681s-2(b), but the *Saunders*

Court also addressed the FCRA's provisions regarding willful violations under § 1681n(a). There, the plaintiff obtained an auto loan from a dealer, and the dealer assigned the loan to a bank. *Saunders*, 526 F.3d at 145. When the bank did not send the plaintiff a payment book, the plaintiff contacted the bank, which informed the plaintiff that he owed no money on any loan. *Id*. The plaintiff checked with the state department of motor vehicles, which had not recorded a lien on his automobile title. *Id*. Later, the plaintiff made more inquiries with the bank, which continued to inform him that it did not have any record of a loan issued to him. *Id*. More than six months after the loan was issued, the bank finally acknowledged the existence of the debt by informing the plaintiff that he was in default on the loan and that he was immediately liable for the entire balance. *Id*. The bank reported the loan to CRAs as charged off. *Id*. The plaintiff disputed the reporting with both the bank and the CRAs, but the bank did not change its reporting and did not report that the plaintiff was contesting the bank's reporting that he defaulted on the loan. *Id*.

The jury found that the bank willfully violated § 1681s-2(b). The bank argued that it was entitled to judgment as a matter of law on both the question whether its reporting was accurate and the question whether its conduct reflected a willful disregard of the FCRA's requirements. According to the bank, its statutory duty to report accurately did not include a duty to report that a consumer disputed its reporting, and there could be no finding that it willfully violated the FCRA because

its conduct was based on a reasonable interpretation of the FCRA's reporting requirements. *Saunders*, 526 F.3d at 151-52.

The Fourth Circuit rejected the bank's arguments, both with respect to accuracy and willfulness. The Fourth Circuit held that there was more than enough evidence to show that the bank had disregarded information about its own errors and that such disregard was enough to support the jury's finding that its inaccurate reporting was willful for the purposes of the FCRA. *Id*. The decision in *Saunders* stands for the proposition that a defendant can be liable for a willful violation of the FCRA when it disregards information that shows the factual inaccuracy of its reporting.

Like the plaintiff in *Saunders*, Plaintiff has alleged facts showing that the CRA Defendants deliberately disregarded the information he provided to prove that, as a factual matter, his payments to Freedom Mortgage were timely. Plaintiff specifically alleges that, as a matter of routine practice, the CRA Defendants rely exclusively on automated processes for reviewing consumer disputes and that these automated processes do not permit the consideration of information provided by the consumer. Complaint [ECF 1] at ¶¶ 80-98. Such willful blindness to consumers' information reflects a reckless disregard for the requirements of the FCRA and provides a basis for a finding of a willful violation. Consequently, Plaintiff has sufficiently alleged that the CRA Defendants willfully violated the FCRA, and they are not entitled to

judgment as a matter of law with respect to Plaintiff's claims under 15 U.S.C. § 1681n(a).

## CONCLUSION AND RELIEF REQUESTED

The district court interpreted Plaintiff's allegations to establish that Plaintiff must have been late in making three of his mortgage payments because Freedom Mortgage was late in processing the payments. This interpretation rejects a plaintiff-favorable inference, which can reasonably be drawn from Plaintiff's allegations: that Freedom Mortgage received Plaintiff's payments on time but simply failed to process them at the time of receipt. Because courts cannot grant judgment on the pleadings by rejecting reasonable inferences in favor of the plaintiff, and because there are no alternative grounds for either full or partial affirmance, the district court's order granting judgment on the pleadings was error, and Plaintiff asks this Court to reverse it.

Dated: July 2, 2025

*/s/ Tarek N. Chami*
Tarek N. Chami
**CONSUMER JUSTICE LAW FIRM**
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

Catherine Tillman, FL #0057663
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (941) 263-7310
E: ctillman@consumerjustice.com

*Attorneys for Appellant Edwin Silva*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

**1. Type-Volume**

This document complies with the word limit of FRAP 32(f) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this document contains 11,535 words.

**2. Typeface and Type-Style**

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

Dated: July 2, 2025

*/s/ Tarek N. Chami*

Tarek N. Chami
**CONSUMER JUSTICE LAW FIRM**
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

Catherine Tillman, FL #0057663
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (941) 263-7310
E: ctillman@consumerjustice.com

*Attorneys for Appellant Edwin Silva*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users, or that I will accomplish service by U.S. Mail for those participants that are not registered CM/ECF users.

*/s/ Tarek N. Chami*
Tarek N. Chami

*Counsel for Appellant*